## Jacob W. Wrisley v. Town of Waterbury.

*Soldier's Bounty.    Selectmen.    Towns.*

Where the application for a town meeting was "to see what course the town will take to fill the quota of men required of the town of Waterbury, under the last two calls of the General Government for soldiers," and the warning was "to see if the town will pay any additional bounty to volunteers from said town, and if any, how much, or what other action they will take on the subject," and the vote was "to pay each volunteer from this town a bounty of $300 when mustered into the United States service," it was *held,* under the circumstances existing, that the $300 bounty was confined to such as should enlist to the credit of said town on the quota under the call or calls made before the date of the vote.

An unauthorized promise of the selectmen to pay a soldier such bounty as the town might pay to others on future calls would not bind the town, though it paid a bounty to others on future calls.

Assumpsit to recover a soldier's bounty, three hundred dollars. Plea, the general issue. Trial by jury, March term, 1869, Peck, J., presiding.

The plaintiff introduced the record of the vote of Waterbury,

of November 30, 1863, and testified in his own behalf in substance that in the winter of 1863–4 he was a soldier, in the military service of the United States, in Virginia; that at this time the general government offered a bounty of $402 and the privilege of a furlough to those soldiers who should re-enlist, and that re-enlistments were going on under that offer during the winter; that just previous to February 1, 1864, he was credibly informed that Waterbury was paying a bounty of $300 for volunteers to its credit; that in consequence of this information, relying on having $300 from the town of Waterbury, together with what the United States offered, he re-enlisted February 1, 1864, for three years, at Brandy Station, in Virginia, and caused his name to be put to the credit of Waterbury, and served through the war and was honorably discharged; that he obtained a furlough in a few days, came home to Waterbury in the fore part of February, and in a day or two called on Mr. Janes, the first selectman of Waterbury at that time, to get his bounty, and "informed him that he had re-enlisted to the credit of Waterbury and asked him if he, the plaintiff, had not got a bounty there; that Mr. Janes replied he guessed not, and said that the quota was full; that the plaintiff told him he could give his name to some other town if Waterbury would not pay him a bounty, and that Mr. Janes said if he would let his name remain to the credit of Waterbury, if they had another call and raised any more men and paid a bounty, they would pay him as much as they did them, and that if they had to raise any more men, if they paid any bounty they would pay the plaintiff as much;" that the plaintiff then concluded to let his name stand to the credit of Waterbury, and it did so remain.

It appeared from the books and records of the adjutant general of this state, introduced in evidence, that there was a call of October 17, 1863, in which the quota of Waterbury was thirty-two; that the next call was February 1, 1864, under which the quota of Waterbury was sixteen; and another, March 14, 1864, quota seventeen; and another July 18, 1864, quota thirty-two; that the plaintiff was mustered in February 1, 1864, and was credited to Waterbury sometime in March, (the day did not appear,) on the adjutant general's boooks, on the call and quota of March 14.

It was conceded that the town availed itself of the plaintiff as a credit to the town, and that after the interview between the plaintiff and Janes, as above stated, the town had to raise and did raise men to fill their subsequent quotas, and paid each a bounty of at least $300, and some much more.

The defendants put in no evidence except record evidence, certificate of the deputy adjutant general, and records of several town meetings. The said certificate showed that the quotas of Waterbury, under the calls previous to the vote of November 30, 1863, were filled by the 19th of January, 1864.

The defendant's counsel insisted that the vote of November 30, 1863, of $300 bounty, was confined to such as should enlist to the credit of the town on the quota then existing under the call which had been made before the date of that vote, and asked the court so to charge, but the court ruled and charged otherwise—to which the defendant excepted.

The defendant also asked the court to instruct the jury that the facts testified to by the plaintiff, as to his interview with Mr. Janes, were a waiver of the right of the plaintiff to a bounty under the vote of November 30, 1863, which the court refused—to which the defendant excepted.

The court left the case to the jury upon the evidence, under a charge not excepted to, except to the refusal to charge as above stated.

The following are the proceedings of a town meeting holden November 30, 1863:

" Whereas application in writing has been made to us by more than six freeholders of the town, to warn a town meeting, ' to see what course the town will take to fill the quota of men required of the town of Waterbury, under the last two calls of the general government for soldiers :'

" Therefore, all the legal voters in town meeting of the town of Waterbury are hereby warned to meet at the hall in the Methodist chapel at the center of said town, on the 30th day of November, A. D., 1863, at one o'clock in the afternoon, to act on the following business :

" 1st. To choose a moderator to govern said meeting.

" 2d. To see if the town will pay any additional bounty to volunteers from said town, and if any, how much, or what action they will take upon the subject.

" 3d. To see if the town will vote to raise money on the grand list to pay said bounty, or for any other town purpose.

" Given under our hand at Waterbury, this 17th day of November, A. D., 1863.     HENRY S. JANES, } *Selectmen.*
                                    FRANCIS GRAVES, }

" At Waterbury, November 30th, 1863, at one o'clock, P. M. Meeting opened, and, pursuant to warning, proceeded and chose Noah Robinson, moderator.

" *Voted,* To pay each volunteer from this town a bounty of $300, when mustered into the United States service.

" *Voted,* To dissolve this meeting."

*Clough & Palmer* and *T. P. Redfield,* for the defendants.

*H. N. Deavitt, T. J. Deavitt* and *Paul Dillingham,* for the plaintiff.

The opinion of the court was delivered by

WILSON, J.   The first question in this case is, whether the plaintiff is entitled to recover under the vote of November 30th, 1863.   The defendants, at the meeting of the town November 30, 1863, regularly voted to pay to each volunteer from said town a bounty of $300 when mustered into the United States service.   The plaintiff claims that said vote was not confined to the quota then existing; that it was a general offer from the town of a bounty to any person who should enlist and be mustered in to the service to the defendants' credit, and he claims that the offer remained open at the time of his enlistment and muster.   The defendants claim that said vote was confined to such as should enlist to the credit of the town on the quota then existing under the call which had been made before the date of that vote.   The right of the plaintiff to maintain this action depends on the construction which may be given to this vote.   The intent and purpose of the vote can not be collected or ascertained from its language alone ; therefore the construction must be upon the view and comparison of the vote and warning under which the vote was passed, and the whole must be construed in the light of the surrounding circumstances.   The quota of the defendants, under the call of October 17, 1863, was twenty-five men after deducting credits.   Previous to warning said

meeting the defendants had notice of the assignment of said quota, and of the time within which they were required by the government to furnish the number of volunteers mentioned in said quota. The application for said meeting, as set forth in the introductory part of the warning, is specific as to the purpose for which the select-men were requested to warn the meeting. It was to see what course the town would take to fill the quota of men required of the town of Waterbury, under the then last two calls of the general government for soldiers. We may suppose that this was read at the meeting as a part of the warning, and as expressing the purpose for which the meeting was called. The subject thus indicated was one calling for immediate action on the part of the town. We think that so much of that application, as was set forth in the warning, must be regarded as important in the interpretation of the vote, unless it should be found that the subjects expressed in the warning, which were to be considered at the meeting, were intended to give and are broad enough to have given the meeting authority to vote a bounty to volunteers from that town to fill the town's quota under a call made subsequent to the date of said vote. The warning contained only three articles. The first was " to choose a moderator." The second was as follows : " To see if the town will pay any additional bounty to volunteers from said town, and if any, how much, or what other action they will take on the subject." Third, " To see if the town will vote to raise money on the grand list to pay said bounty, or for any other purpose." In this article the words, " to pay said bounty," refer to and mean such bounty, if any, as the town should vote under the second article above quoted. This being so, it is obvious that the record evidence of the purpose for which it was proposed by the warning to vote a bounty, is to be found in the introductory part of the warning and its second article. The substance of the warning is, that the selectmen had been duly requested to warn a town meeting to see what course the town would take to fill the quota of men required of the town under the then last two calls of the government for soldiers. " Therefore," that is, for reason of said application for the meeting and its purpose as expressed in the introductory part of the warning, all legal voters in town meeting

were warned to meet at the place and time named in the warning, *to see if the town would pay any additional bounty to volunteers from said town.* No legal voter, during the rebellion, could have had any doubt as to the meaning of a " volunteer," nor as to the nature of the service expected of him, or where it was to be performed. But the article last referred to does not express the purpose for which a person should volunteer from said town, nor the time or place of service. Hence in order to understand the meaning of that article, without going outside of the record evidence, we must consider the subject matter of the article in connection with the purpose of the meeting as stated in the introductory part of the warning. Upon this view of the material parts of the warning, it appears that " the subject to be considered at that meeting " was, to see if the town would pay any additional bounty to volunteers from the defendant town, to fill the quota of men required of the town of Waterbury under the (then) last two calls of the government for soldiers. The vote of the town under that warning, " to pay each volunteer from that town a bounty of $300, when mustered into the United States service," is perfectly consistent with the limitation expressed in the introductory part of the warning. The defendants at that time had knowledge of their quota under the call of October 17, 1863, but they had no knowledge at the time of that meeting that any further call for soldiers would be made. All the surrounding circumstances tend to show that the whole proceedings of that meeting were had with reference to filling the quota then existing and without reference to any future call. If the town had intended to extend the provisions of the vote to volunteers who should apply on some quota of the town under a then future call, some express provision of this kind would have been made. No one can reasonably suppose that the town by that vote intended to pay a bounty to every volunteer who should at any time, during the remainder of that war, enlist and be mustered in to the credit of the defendant town. It would seem that the plaintiff had no knowledge of the terms of the vote at the time he enlisted. But the whole proceedings of that meeting became matter of public record, open to inspection, and it seems to us that no one could, upon

examination of the whole record, have had any doubt as to the limitation of the offer contained in said vote. The quota of the defendants, under the call made previous to said vote, was filled by the 19th of January, 1864. The plaintiff enlisted on the 1st day of February, 1864, and was applied on the defendants' quota under the call of March 14, 1864.

The conclusion to which we have come is, that the vote of November 30th, 1863, of $300 bounty, was confined to such volunteers as should enlist to the credit of the town on the quota then existing under the call or calls made before the date of that vote. From this it follows that the defendants were entitled to a charge according to their first request.

2. The plaintiff also claims to recover on the ground of the arrangement between him and Janes, who was one of the selectmen of the town at that time. But that arrangement did not make the town liable. The selectmen were not authorized to promise the plaintiff a bounty upon his said enlistment. We think this action cannot be maintained.

The judgment of the county court is reversed and judgment for the defendants to recover their costs.